IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                  Case No.: 25-CV-658

$9,900.00 IN U.S. CURRENCY,

        Defendant.

---

VERIFIED COMPLAINT IN REM

---

Plaintiff, United States of America, by its attorneys, Chadwick M. Elgersma, Acting United States Attorney for the Western District of Wisconsin, and by Heidi L. Luehring, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure. The allegations in this Complaint are supported by a declaration from Anthony Gischia, Special Agent with the Wisconsin Department of Justice, Division of Criminal Investigation and currently assigned to the Central Wisconsin Narcotics Task Force (CWNTF) as a Federal Task Force Officer (TFO) for the federal Bureau of Investigation (FBI).

    1.    This is a civil action *in rem* brought to enforce the provision of 21 U.S.C. § 881(a)(6) for the forfeiture of all moneys furnished or intended to be furnished in exchange for a controlled substance, all proceeds traceable to such an exchange, and all

moneys used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*

2. The defendant property consists of $9,900.00 in U.S. currency seized on March 28, 2025, in Madison, Wisconsin.

3. Plaintiff brings this action *in rem* to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b). Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem,* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; 2) proceeds traceable to such an exchange; and 3) money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

6. On December 12, 2024, law enforcement officers were conducting surveillance of Trentin Holsten (Holsten) aka "Trap". Holsten was observed operating a Toyota Camry that was also occupied by two black males. A confidential informant (CI)

2

attempted to contact Holsten at XXX-XXX-0910, leaving text and voice messages. CI received a text message from XXX-XXX-0910 instructing CI to "go to the casino", the Ho-Chunk Gaming in Nekoosa, Wisconsin. CI was next instructed to go to the Village of Plover, Portage County, Wisconsin. An undercover officer (UC) instructed the CI to tell Holsten that CI could not travel to the Village of Plover and that CI would have the UC meet with Holsten in the Village of Plover.

7. UC then communicated with XXX-XXX-0910 and was told to "come to plover" to meet at "2030 adams st" which was located in the Village of Plover, Portage County Wisconsin. UC had a recorded telephone call with XXX-XXX-0910. During that call, UC arranged to purchase three ounces of methamphetamine for $1,000. UC parked in front of the residence at 2030 Adams Street in the Village of Plover, Portage County, Wisconsin. UC received a text message from 843-670-0910 that informed UC that he was pulling up to UC's location. A Toyota Camry drove past UC. UC received a phone call from 843-670-0910 and was instructed to follow to a different location. UC followed the Camry to the intersection of Madison Avenue and Roosevelt Drive in the Village of Plover, Portage County, Wisconsin. UC made contact with the occupants of the vehicle. UC stood outside the rear driver's side door of the Camry. UC observed the vehicle was occupied by a white male driver, an unknown black male seated in the front passenger seat, and an unknown black male seated in the rear driver's side seat. All occupants of the vehicle were wearing face coverings while UC met with them. The unknown black male seated in the front passenger seat reached back towards the rear driver side

3

window of the vehicle and provided UC with a plastic knotted bag of methamphetamine.[1] UC provided the unknown black male $1,000 in pre-recorded buy funds. Upon completion of the transaction, the Camry departed the area. Due to the occupants in the Camery wearing face coverings during the transaction, UC was unable to positively identify the black males in the vehicle. UC was able to positively identify Trentin Holsten as the operator of the vehicle.

8. On December 19, 2024, UC contacted Holsten to arrange the purchase of ten ounces of methamphetamine from Holsten. UC was instructed to meet Holsten in the Pick 'n Save parking lot, which was located at 900 E. Riverview Expressway, in the City of Wisconsin Rapids, Wood County, Wisconsin. Holsten arrived at the location driving a black BMW. UC entered the rear driver's side seat of Holsten's vehicle. A black male was seated in the front passenger seat of the BMW. Holsten directed UC to hand Holsten a plastic grocery-style bag that was positioned on the rear passenger seat next to UC. UC observed the contents of the bag and based on his training and experience believed the bag to contain a large quantity of methamphetamine. UC estimated the contents of the bag to be consistent with multiple pounds of methamphetamine. Holsten confirmed with UC that UC wanted to purchase ten ounces of methamphetamine. UC confirmed the purchase price with Holsten and provided Holsten $3,000 in pre-recorded buy funds. Holsten handed the currency to the

---

[1] The substance was submitted to the Drug Enforcement Administration (DEA) North Central Laboratory for testing and analysis. The lab identified the presence of Methamphetamine Hydrochloride.

4

passenger to count. Holsten, with the assistance of the front passenger, weighed and packaged ten ounces of methamphetamine[2] into three clear plastic bags.[3] Holsten handed UC the bags. UC exited Holsten's vehicle, returned to UC's vehicle and departed the area.

9. On January 14, 2025, UC contacted Holsten to arrange the purchase of one-half pound of methamphetamine and nine grams of fentanyl. Holsten directed UC to three different locations before finally meeting with UC in the parking lot of 1100 E. Riverview Expressway, in the City of Wisconsin Rapids, Wood County, Wisconsin. UC entered Holsten vehicle sitting directly behind the driver's seat. In the front passenger seat was an unknown black male, who UC recognized as having previously accompanied Holsten on a prior controlled substance transaction. In the rear passenger side seat was an unknown black male, and in the middle rear passenger seat was a female later identified as Brittany Holsten. UC handed Holsten $3,030 in pre-recorded buy funds. Holsten provided UC with approximately 224.5 grams of methamphetamine[4] and approximately 10 grams of fentanyl.[5] During the transaction, UC observed Holsten was in possession of what appeared to be a semi-auto handgun

---

[2] The substance was submitted to DEA North Central Laboratory for testing and analysis. The lab identified the presence of Methamphetamine Hydrochloride.
[3] The three plastic baggies weighed approximately 113.0 grams, 113.0 grams, and 57.5 grams for a total approximate weight of 283.5 grams
[4] The substance was submitted to the DEA North Central Laboratory for testing and analysis. The lab identified the presence of Methamphetamine Hydrochloride.
[5] The substance was submitted to the DEA North Central Laboratory for testing and analysis. The lab identified the presence of Fentanyl (calc. as Hydrochloride), Metonitazene, Diphenhydramine, Xylazine, Medetomidine, and Acetaminophen.

5

containing an extended magazine. The handgun was on the front driver's seat of the vehicle, next to Holsten and was positioned in a manner that gave UC the impression Holsten wanted UC to be able to observe the firearm.

10. On February 10, 2025, UC contacted Holsten to arrange to purchase 9.5 ounces of methamphetamine from Holsten. On February 11, 2025, Holsten directed UC to meet UC at the Pick 'n Save Parking lot, which was located at 900 E. Riverview Expressway, in the City of Wisconsin Rapids, Wood County, Wisconsin. UC entered Holsten's vehicle in the front passenger seat. Holsten was the sole occupant of the vehicle. UC provided Holsten with $3,000 in pre-recorded buy funds. Holsten then provided UC with two plastic baggies containing methamphetamine[6] that weighed a total of approximately 268 grams.

11. On March 18, 2025, UC contacted Holsten to arrange for the purchase of fifty grams of fentanyl from Holsten. On March 20, 2025, UC was directed to 2440 E. Spring Drive, which is located in the City of Madison, Dane County, Wisconsin. UC entered the rear passenger seat of Holsten's vehicle. An unknown black male was seated in the front passenger seat. UC provided Holsten with $3,250 in pre-recorded buy funds.  Holsten then provided UC with a plastic bag containing fentanyl[7] that weighed approximately 51.5 grams.

---

[6] Both packages were submitted to the DEA North Central Laboratory for testing and analysis. The lab identified the presence of Methamphetamine Hydrochloride in both packages.

[7] The substance was submitted to the DEA North Central Laboratory for testing and analysis. The lab identified the presence of Fentanyl (calc. as Hydrochloride), Metonitazene, Diphenhydramine, Xylazine, Medetomidine, and Quinine.

12. On March 28, 2025, law enforcement executed a search warrant at Holsten's residence located at 156 Rodney Court, Unit B, in the City of Madison, Dane County, Wisconsin. In the search of the residence, officers located on a shelf in the bedroom closet a plastic container. On top of the container, was a vacuum sealed bag containing approximately 481.5 grams of marijuana and a plastic baggie containing approximately 330.5 grams of marijuana.[8] Inside the plastic container law enforcement located a blue digital scale with a powdery residue and $9,900 in U.S. currency. On the closet floor was a safe containing trace amounts of cocaine base.[9] On the kitchen island, officers located rolling papers, a baggie containing 9.5 grams of marijuana, a "Goldfish Baked" bag containing four pre-rolled marijuana joints weighing approximately 3 grams, and a "Crunch Berriz" bag containing approximately 22 grams of marijuana.

13. Any additional facts and circumstances supporting the seizure of the defendant property are contained within the attached declaration and incorporated herein this complaint.

WHEREFORE, the United States of America prays:

(1)  that process of warrant be issued for the arrest of the defendant property;

---

[8] Using a NARK II Duquenois-Levine Reagent field drug test, the substance tested positive for the Presence of THC, the active ingredient in marijuana.
[9] Using a TruNarc field drug testing device, the substance tested positive for the presence of cocaine base.

(2)    that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

(3)    that judgment be entered ordering the property forfeited to the United States of America for disposition according to law; and

(4)    that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted this 6th day of August 2025.

                              CHADWICK M. ELGERSMA
                              Acting United States Attorney

By:    */s/ Heidi L. Luehring*
       HEIDI L. LUEHRING
       Assistant U. S. Attorney
       222 W. Washington Avenue
       Suite 700
       Madison, Wisconsin 53703